UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMERICAN DELI INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOP A LLC and TAE SAM MUN, <br><br> Defendants. | Civil Action No. _____ |

## **COMPLAINT**

Plaintiff American Deli International, Inc. ("American Deli") files this

Complaint against Defendants Top A LLC ("Top A") and Tae Sam Mun ("Mun")

(together, "Defendants") and alleges as follows:

## **NATURE OF THE ACTION**

1.

This action arises from Defendants' breaches of the in-term restrictive

covenants contained in Franchise Agreement and related Guaranty among the

Parties, including through their ownership, operation, engagement, and financial

interest in a competing restaurant located immediately next door to the American

1

Deli restaurant at issue. Although American Deli has terminated the franchise agreement and related guaranty, Defendants continue to own, operate, and manage this American Deli restaurant and have failed and refused to comply with their post-termination covenants in the franchise agreement and related lease assignment. Accordingly, American Deli asserts claims for breach of contract, federal trademark infringement, and federal unfair competition against Defendants.

## FACTUAL BACKGROUND

### I.      Parties, Venue and Jurisdiction.

2.

American Deli is a Delaware corporation with its principal place of business located at 275 Scientific Dr. NW, Suite 1200, Peachtree Corners, Georgia 30092.

3.

Top A is a Texas limited liability company with its principal place of business located at 7614 Greatwood Lake Dr., Sugar Land, Texas 77479 – 6322. Top A may be served through its registered agent, Mun, located at 3710 Point Clear Dr., Missouri City, Texas 77459.

4.

Mun owns and maintains a 100% membership interest in Top A.

5.

Mun is a resident of the State of Texas.

6.

American Deli and Top A entered into the American Deli International, Inc. Franchise Agreement dated March 15, 2024 (the "Franchise Agreement"), in which American Deli granted Top A a franchise in a restaurant located at 6210 Scott St., Suite C, Houston, Texas 77021 (the "American Deli Restaurant"). A true and correct copy of the Franchise Agreement is attached as Exhibit 1.

7.

Mun entered into the Controlling Principals Guaranty and Covenant with American Deli dated March 15, 2024 (the "Guaranty"), related to the Franchise Agreement. A true and correct copy of the Guaranty is attached as Exhibit 2.

8.

Mun is a Controlling Principal under the terms of both the Franchise Agreement and Guaranty.

9.

Mun entered into the Guaranty in order to induce American Deli to enter into the Franchise Agreement.

10.

Pursuant to the terms of the Guaranty, Mun agreed to absolutely, unconditionally and irrevocably guaranty Top A's payment and performance of its obligations under the terms of the Franchise Agreement.

11.

All claims, controversies, disputes or actions related to the Franchise Agreement, Guaranty, or the relationship created thereby are to be governed, enforced and interpreted under Georgia law under Section 18.10 of the Franchise Agreement.

12.

Pursuant to Section 18.9(a) of the Franchise Agreement, American Deli and Defendants agreed that "any claim, controversy or dispute arising out of or relating to the franchise, Franchisee's establishment or operation of any Restaurant under this Agreement (and any amendments thereto) … that cannot be amicably settled among the parties or through mediation shall, except as specifically set forth herein and in Section 18.10, be referred to arbitration."

4

13.

Pursuant to Section 18.9(c)(iii) of the Franchise Agreement, however, "[d]isputes and controversies relating to actions to obtain possession of the premises of the Restaurant under lease or sublease" "shall not be subject to arbitration."

14.

Under Section 18.9(c)(iv) of the Franchise Agreement, "[a]ctions by Franchisor for money" also "shall not be subject to arbitration."

15.

Pursuant to Section 18.10 of the Franchise Agreement, Defendants and American Deli irrevocably submitted themselves to the venue and jurisdiction in this Court with respect to any action asserted by American Deli "(1) FOR MONIES OWED (2) FOR INJUNCTIVE OR OTHER EXTRAORDINARY RELIEF OR (3) INVOLVING POSSESSION OR DISPOSITION OF, OR OTHER RELIEF RELATING TO, REAL PROPERTY…."

16.

American Deli seeks monies owed as well as permanent injunctive relief against Defendants in this case in accordance with Sections 18.9(c)(iii), 18.9(c)(iv) and 18.10 of the Franchise Agreement.

7.

This Court has subject matter jurisdiction in this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332(a)(1) and 1338(a) and (b).

17.

Jurisdiction and venue are proper in this Court under 28 U.S.C. § 1391, including pursuant to Section 18.10 of the Franchise Agreement.

II. **The Franchise Agreement between American Deli and Top A.**

18.

American Deli has developed and owns a unique and distinctive system (the "System") relating to the establishment and operation of quick service restaurants that feature chicken wings, philly cheese steak and other sandwiches, other freshly prepared, grilled or fried items, beverage items and promotional items.

19.

As part of its business, American Deli offers franchises for its distinctive and proprietary System to franchisees across the United States.

20.

In Section 10.3(a) of the Franchise Agreement, Top A and American Deli

agreed, in relevant part, as follows:

> In-Term Covenants. Franchisee and the Controlling Principals specifically acknowledge that, pursuant to this Agreement, Franchisee and the Controlling Principals will receive valuable training, trade secrets and Confidential Information, including, without limitation, information regarding the operational, sales, promotional and marketing methods and techniques of Franchisor and the System that are beyond the present skills and experience of Franchisee and the Controlling Principals and Franchisee's managers and employees. Franchisee and the Controlling Principals acknowledge that such specialized training, trade secrets and Confidential Information provide a competitive advantage and will be valuable to them in the development and operation of the Restaurant, and that gaining access to such specialized training, trade secrets and Confidential Information is, therefore, a primary reason why they are entering into this Agreement. In consideration for such specialized training, trade secrets, Confidential Information and rights, Franchisee and the Controlling Principals covenant that with respect to Franchisee, during the term of this Agreement (or with respect to each of the Controlling Principals, during the term of this Agreement for so long as such individual or entity satisfies the definition of "Controlling Principals" as described in Section 18.21), except as otherwise approved in writing by Franchisor, neither Franchisee nor any of the Controlling Principals shall, either directly or indirectly, for themselves or through, on behalf of or in conjunction with any person or entity:

> (i) Divert, or attempt to divert, any business or customer of the franchised business to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the System.

7

(ii) Own, maintain, operate, engage in, or have any financial or beneficial interest in (including any interest in a legal entity), advise, assist or make loans to any business located within the United States, its territories or commonwealths, or any other country, province, state or geographic area in which Franchisor has used, sought registration of or registered the same or similar Marks or operates or licenses others to operate a business under the same or similar Marks, which business is of a character and concept similar to the Restaurant, including a business that offers and sells as a menu item any one or more of chicken wings, philly cheese steak sandwiches or salads.

**III.     American Deli's Termination of the Franchise Agreement.**

21.

In the fall of 2025, American Deli was informed that a restaurant with the name "Juicy Crawfish" was operating at 6210 Scott St., Suite B, Houston, Texas 77021 (the "Juicy Crawfish Restaurant"), which is next door to the American Deli Restaurant.  A picture showing both the American Deli Restaurant and the Juicy Crawfish Restaurant is attached as Exhibit 3.

22.

The Juicy Crawfish Restaurant was owned by Top Cajun LLC ("Top Cajun").

23.

Mun was the Managing Member and an owner of Top Cajun.

8

24.

Through Top Cajun, Mun owned, operated, and managed the Juicy Crawfish Restaurant.

25.

The Juicy Crawfish Restaurant offered chicken wings for sale at the restaurant itself as well as online.  True and correct copies of menus for the Juicy Crawfish Restaurant are attached as Exhibit 4.

26.

The chicken wings sold and offered for sale at the Juicy Crawfish Restaurant included recipes and sauces that were similar or identical to those offered for the chicken wings sold and offered for sale at the American Deli Restaurant, including lemon pepper, sweet chili, medium, and hot.

27.

The menus for Juicy Crawfish Restaurant contained the following statements displayed next to and along with the chicken wings sold and offered for sale: "We stole the flavor from next door.  Don't worry – They're cool with it."

28.

Defendants never informed or disclosed to American Deli that Mun had any ownership interest in Top Cajun or the Juicy Crawfish Restaurant.

29.

At no time did American Deli ever authorize, agree, or consent to Mun's ownership, operation, or management of Top Cajun or the Juicy Crawfish Restaurant.

30.

Defendants never informed or disclosed to American Deli that chicken wings were being sold at the Juicy Crawfish Restaurant, including using similar or identical recipes or sauces as those sold and offered for sale at the American Deli Restaurant.

31.

At no time did American Deli ever authorize, agree, or consent to allow the sale of any chicken wings at the Juicy Crawfish Restaurant.

32.

Mun's ownership, operation, and management of the competing Juicy Crawfish Restaurant through Top Cajun constitute breaches of the in-term covenants in Sections 10.3(a)(i) and (ii) of the Franchise Agreement.

33.

In owning, operating, and managing the Juicy Crawfish Restaurant through Top Cajun, Defendants diverted and attempted to divert the business and customers of the American Deli Restaurant to their competing Juicy Crawfish Restaurant, directly and indirectly, in breach of Section 10.3(a)(i) of the Franchise Agreement.

34.

In owning, operating, and managing the Juicy Crawfish Restaurant through Top Cajun, Defendants have injured and prejudiced the goodwill associated with American Deli's Marks and System, directly and indirectly, in breach of Section 10.3(a)(i) of the Franchise Agreement.

35.

In owning, maintaining, operating, managing, engaging in, having a financial and beneficial interest in, advising, and assisting the Juicy Crawfish Restaurant through Top Cajun, which is a business of a similar character and concept as the American Deli Restaurant that offered and sold menu items such as chicken wings, Defendants breached Section 10.3(a)(ii) of the Franchise Agreement.

36.

American Deli sent Defendants a letter dated October 29, 2025 (the

"Termination Letter"), in accordance with the terms of the Franchise Agreement

and Guaranty, wherein American Deli terminated the Franchise Agreement.  A true

and correct copy of the Termination Letter is attached as Exhibit 5.

37.

In Section 16.2 of the Franchise Agreement, Defendants and American Deli

agreed, in relevant part, as follows:

> Default with No or Limited Right to Cure. Franchisee shall be deemed to be in material default and Franchisor may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon notice to Franchisee, upon the occurrence of any of the following events.
>
> …
>
> (k) Noncompetition. If Franchisee or any of the Controlling Principals fails to comply with the in-term covenants in Section 10.3 or Franchisee fails to obtain execution of the covenants and related agreements required under Section 10.3(g) within thirty (30) days after being requested to do so by Franchisor.
>
> …
>
> (q)  Fraud or Conduct Affecting the Marks. If Franchisee or any of the Controlling Principals commits fraud in connection with the purchase or operation of the Restaurant or otherwise engages in conduct that, in the sole judgment of Franchisor, materially impairs the goodwill association with the Marks.

38.

As set forth in the Termination Letter, American Deli terminated the

Franchise Agreement due to Defendants' numerous defaults and material breaches

of the Franchise Agreement.

39.

American Deli was entitled to immediately terminate the Franchise

Agreement pursuant to Sections 16.2(k) and (q) of the Franchise Agreement with

no right to cure by Defendants.

IV.     **Defendants' Continued and Ongoing Breaches of Their Post-
        Termination Obligations Under the Terms of The Franchise
        Agreement and Guaranty.**

40.

In Section 17.1 of the Franchise Agreement, Defendants agreed as follows:

> Cease Operation. Franchisee shall immediately cease to operate
> the Restaurant under this Agreement, and shall not thereafter, directly
> or indirectly, represent to the public or hold itself out as a present or
> former franchisee of Franchisor.

41.

Defendants have failed and refused to cease operation of the American Deli

Restaurant and remain in breach of Section 17.1 of the Franchise Agreement.

13

42.

In Section 17.2 of the Franchise Agreement, Defendants agreed as follows:

Cease Use of Marks. Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, computer software, procedures, and techniques associated with the System; the mark "American Deli"; and all other Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System. In particular, Franchisee shall cease to use, without limitation, all signs, advertising materials, displays, stationery, forms and any other articles, which display the Marks.

43.

Defendants have failed and refused to cease using the confidential methods, computer software, procedures, and techniques associated with the System or the American Deli Marks and the distinctive forms, slogans, signs, symbols, and devices associated with the System and Defendants remain in breach of Section 17.2 of the Franchise Agreement.

44.

Defendants have failed and refused to cease using the signs, advertising materials, displays, stationery, forms and other articles which display the American Deli Marks and Defendants remain in breach of Section 17.2 of the Franchise Agreement.

45.

In Section 17.4 of the Franchise Agreement, Defendants agreed as follows:

No Imitation. Franchisee agrees, if it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit, copy or colorable imitation of the Marks, either in connection with such other business or the promotion thereof, that is likely to cause confusion, mistake, or deception, or that is likely to dilute Franchisor's rights in and to the Marks, and further agrees not to utilize any designation of origin or description or representation that falsely suggests or represents an association or connection with Franchisor constituting unfair competition.

46.

By continuing to own, operate, and manage the American Deli Restaurant despite receiving the Termination Letter, Defendants remain in breach of Section 17.4 of the Franchise Agreement.

47.

In Section 17.7 of the Franchise Agreement, Defendants agreed as follows:

Return of Manuals. Franchisee shall immediately deliver to Franchisor all Manuals, records, files, instructions, correspondence, all materials related to operating the Restaurant, including, without limitation, agreements, invoices, and any and all other materials relating to the operation of the Restaurant in Franchisee's possession or control, and all copies thereof (all of which are acknowledged to be Franchisor's property), and shall retain no copy or record of any of the foregoing, except Franchisee's copy of this Agreement and of any correspondence between the parties and any other documents that Franchisee reasonably needs for compliance with any provision of law.

48.

Defendants remain in breach of Section 17.7 of the Franchise Agreement.

49.

In Section 17.9 of the Franchise Agreement, Defendants agreed as follows:

Advertising Materials. Franchisee shall also immediately furnish Franchisor an itemized list of all advertising and sales promotion materials bearing the Marks or any of Franchisor's distinctive markings, designs, labels, or other marks thereon, whether located on Franchisee's premises or under Franchisee's control at any other location Franchisor shall have the right to inspect these materials. Franchisor shall have the option, exercisable within thirty (30) days after such inspection, to purchase any or all of the materials at Franchisee's cost, or to require Franchisee to destroy and properly dispose of such materials. Materials not purchased by Franchisor shall not be utilized by Franchisee or any other party for any purpose unless authorized in writing by Franchisor.

50.

Defendants remain in breach of Section 17.9 of the Franchise Agreement.

51.

In Section 17.10 of the Franchise Agreement, Defendants agreed, in relevant part, as follows:

Signs and Menu Boards. … Franchisee shall remove, and return to Franchisor, all exterior signs, interior signs, menu boards and trade dress as required by Franchisor at Franchisee's cost.

52.

Defendants remain in breach of Section 17.10 of the Franchise Agreement.

16

**V.**      **Due to the Termination of the Franchise Agreement, Top A's Lease Has Been Assigned to American Deli.**

53.

In entering into the Franchise Agreement, Defendants agreed to the Collateral Assignment of Lease dated March 15, 2024 (the "Lease Assignment"), included as Attachment B of the Franchise Agreement.  A true and correct copy of the Lease Assignment is attached as Exhibit 6.

54.

In Section 1 of the Lease Assignment, the Parties agreed that "[a]s collateral security for Franchisor, Franchisee hereby assigns all of its rights, powers, privileges and interests in, to and under the Lease to Franchisor, fully intending that Franchisor shall have the rights and powers and be entitled to the benefits thereunder to the same degree and extent as though the Lease had been made between the Landlord and Franchisor, subject, however, to the conditions hereof."

55.

In Section 10 of the Lease Assignment, the Parties agreed, in relevant part, Top A "hereby irrevocably appoints Franchisor as Franchisee's attorney-in-fact to exercise any or all of Franchisee's rights in, to, or under the Lease from and after the occurrence of an event of default under the Franchise Agreement … and after the occurrence of any such event of default, and to do any or all other acts from

and after the occurrence of any such event of default, in Franchisee's name or in Franchisor's own name, that Franchisee could do under the Lease with the same force and effect as if this Assignment had not been made. This power of attorney is coupled with an interest. Nothing contained in this Assignment shall limit any rights or remedies of the Franchisor under the Franchise Agreement."

56.

In entering into the Franchise Agreement, Defendants agreed to the Lease Addendum (the "Lease Addendum"), included as Attachment D of the Franchise Agreement.  A true and correct copy of the Lease Addendum is attached as Exhibit 7.

57.

The Lease Addendum was executed by American Deli, OST Scott Ren LLC (the "Landlord"), and a predecessor-in-interest of Top A, KSP Pearland, Inc. ("KSP").

58.

In the Assignment dated March 15, 2024 (the "Assignment"), KSP assigned to Top A all of its right, title, and interest in and to the commercial lease related to the American Deli Restaurant (the "Lease") and the Lease Addendum with the

18

express consent and authorization of the Landlord.  A true and correct copy of the Assignment is attached as Exhibit 8.

59.

In Section 1(d) of the Lease Addendum, the Landlord, Top A, and American Deli agreed as follows:

> If Franchisor … notifies Landlord of the termination of the Franchise Agreement, and subject to rights of any leasehold mortgagee, Franchisor shall have the right and option, upon ten (10) days' prior written notice to Landlord, to succeed to Lessee's interest under the Lease and assume the terms, covenants, obligations and conditions of the Lease for the remainder of the term, together with any applicable renewal options … Tenant represents and warrants that the Franchise Agreement authorizes Franchisor to assume Tenant's rights and obligations of the Lease in the event of a default by Tenant under the Lease or the termination of the Franchise Agreement. Tenant hereby agrees in the event Landlord is notified by Franchisor that Franchisor has assumed Tenant's interest in the Lease pursuant to the terms of the Franchise Agreement that Landlord shall have the right to rely upon and act upon such representation and treat Franchisor as the tenant under the Lease from and after the date as so stated in Franchisor's notice to Landlord … Tenant acknowledges that Landlord will be acting in good faith in treating Franchisor as the tenant in reliance upon the foregoing representations and warranties and that such representations and warranties are a material element of the consideration inducing Landlord to treat Franchisor as the tenant ….

60.

Under Sections 1(c) and (g) of the Lease Addendum, the parties agreed that American Deli maintained a right to access the Restaurant upon termination of the Franchise Agreement.

19

61.

Under Section 1(e) of the Lease Addendum, American Deli is entitled to assign the Lease to a new franchisee after termination of the Franchise Agreement.

62.

Under Section 17.11 of the Franchise Agreement, Defendants agreed as follows:

> If Franchisee operates the Restaurant under a lease for the Restaurant premises with a' third party or, with respect to any lease for equipment used in the operation of the franchised business, then, Franchisee shall, at Franchisor's option, assign to Franchisor any interest that Franchisee has in any lease for the premises of the Restaurant or any equipment related thereto ….

63.

American Deli has properly notified the Landlord of the termination of the Franchise Agreement.

64.

Under the terms of the Lease Assignment and Franchise Agreement, American Deli remains entitled to exercise any and all of Top A's rights in, to, or under the Lease.

20

65.

Pursuant to the terms of the Lease Addendum and Franchise Agreement, American Deli remains entitled to succeed Top A's interest in the Lease and has assumed the terms, covenants, obligations, and conditions of the Lease.

66.

Pursuant to the terms of the Lease Addendum and Franchise Agreement, Top A expressly agreed and authorized American Deli to assume Top A's rights and obligations for the Lease upon termination of the Franchise Agreement.

67.

Pursuant to the terms of the Lease Addendum and Franchise Agreement, the Landlord maintains the right to treat American Deli as a tenant under the Lease.

68.

To date, Defendants have failed and refused to allow American Deli to access the Restaurant in accordance with the terms of the Lease Assignment, Lease Addendum, and Franchise Agreement.

69.

To date, Defendants have failed and refused to allow American Deli to take peaceful possession of the Restaurant as a tenant under the Lease in accordance with the terms of the Lease Assignment, Lease Addendum, and Franchise Agreement.

70.

To date, Defendants have failed and refused to allow American Deli to assign the Lease to a new franchisee in accordance with the terms of the Lease Assignment, Lease Addendum, and Franchise Agreement.

71.

Section 17.6 of the Franchise Agreement provides as follows:

Franchisee and the Controlling Principals shall pay to Franchisor all damages, costs and expenses, including reasonable attorneys' fees, incurred by Franchisor in connection with obtaining any remedy available to Franchisor for any violation of this Agreement and, subsequent to the termination or expiration of this Agreement, in obtaining injunctive or other relief for the enforcement of any provisions of this Article.

72.

Pursuant to the terms of the Guaranty, Mun agreed as follows:

Guarantor agrees to defend, indemnify and hold Franchisor harmless against any and all losses, damages, liabilities, costs and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of investigation, court costs, and arbitration fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under any agreement between Franchisee and Franchisor.

73.

Due to Defendants' various breaches of the material terms of the Franchise Agreement, Guaranty, Lease Assignment, and Lease Addendum, American Deli is entitled to payment of all of Defendants' monetary obligations owed to American Deli, including its reasonable attorneys' fees and costs, pursuant to Section 17.5 of the Franchise Agreement.

74.

Due to Defendants' various breaches of the material terms of the Franchise Agreement, Guaranty, Lease Assignment, and Lease Addendum, American Deli is entitled to payment of all of the damages incurred by American Deli, including liquidated damages and its reasonable attorneys' fees and costs, pursuant to Section 17.6 of the Franchise Agreement.

75.

American Deli notifies Defendants of the following:

Pursuant to O.C.G.A. § 13-1-11, American Deli notifies Defendants that the provisions in the Franchise Agreement and Guaranty relative to the payment of reasonable attorney's fees and costs shall be enforced and that Defendants have ten (10) days from the date of the service of this Complaint to pay the amounts owed to American Deli without the attorney's fees or costs. If Defendants shall pay such amounts in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void.

76.

Through their misconduct, Defendants have acted in bad faith, been stubbornly litigious and caused American Deli unnecessary trouble and expense.

77.

As a result of Defendants' misconduct, American Deli is entitled to an award of its reasonable attorneys' fees and costs incurred in this matter pursuant to O.C.G.A. § 13-6-11.

VI.        **American Deli and Its AMERICAN DELI Marks.**

78.

American Deli was formed in 2008, and American Deli has operated continuously since then.

24

79.

During the course of its business, American Deli has been assigned certain intellectual property rights, including various trade and service marks, from its affiliate, American Deli Plus, Inc. ("American Deli Plus").

80.

American Deli has been assigned trademarks using the "American Deli" names and logos to identify its restaurant and related services, including those with U.S. Registration Nos. 5520196, 3741212 and 3759938 (collectively, the "AMERICAN DELI Marks"), which were owned by American Deli Plus.  True and correct copies of federal trademark registrations for the AMERICAN DELI Marks are attached as Exhibit 9.

81.

American Deli Plus transferred and assigned all of its right, title and interest in the AMERICAN DELI Marks to American Deli through an assignment dated April 28, 2021.  A true and correct copy of the United States Patent and Trademark Office Notice of Recordation of Assignment Document recorded with the USPTO on April 29, 2021, by American Deli related to the AMERICAN DELI Marks is attached as Exhibit 10.

82.

The AMERICAN DELI Marks are well-known in the industry through their widespread, continuous and prominent use by American Deli in interstate commerce.

83.

The federal registrations of the AMERICAN DELI Marks remain valid and are in full force and effect.  Such registrations constitute evidence of American Deli's exclusive right to use and control the AMERICAN DELI Marks in connection with restaurant and related services.

84.

American Deli also owns common law rights to its AMERICAN DELI Marks by virtue of its widespread, continuous and prominent use of the AMERICAN DELI Marks to market, advertise, distribute, offer for sale and sell the restaurant and related services offered by American Deli, including through American Deli's franchisees.

85.

American Deli is the owner of all right, title and interest in and to the AMERICAN DELI Marks, which serve to uniquely identify American Deli's restaurant and related services. The AMERICAN DELI Marks are inherently distinctive and serve to identify and indicate American Deli as the source of restaurant and related services to the relevant consuming public throughout the United States.

VII.      **Defendants' Infringement of the AMERICAN DELI Marks.**

86.

Defendants own, operate, and manage the American Deli Restaurant and have marketed, advertised, offered for sale, distributed and sold in interstate commerce its goods and services using identical or virtually identical names and designs as the AMERICAN DELI Marks (the "Infringing Names"), including after the termination of the Franchise Agreement.

87.

Defendants had actual and constructive knowledge of American Deli's widespread, continuous and prominent use of the AMERICAN DELI Marks prior to and during Defendants' continued use of the Infringing Names.

88.

Defendants knowingly and willingly sought to benefit from the substantial goodwill and fame in the AMERICAN DELI Marks by using the Infringing Names to identify, market, advertise, distribute, offer for sale and sell Defendants' own various goods and services, including restaurant and related services, including after the termination of the Franchise Agreement.

89.

American Deli has never authorized, permitted or licensed Defendants to use any variation of any of the AMERICAN DELI Marks after the termination of the Franchise Agreement.

90.

Defendants' use of the Infringing Names on their competing goods and services, including restaurant and related services, is likely to confuse, mislead and deceive the relevant consuming public by falsely suggesting that Defendants' goods or services are endorsed, sponsored, manufactured, distributed, marketed or sold by American Deli, which they are not.

28

91.

Defendants' unlawful conduct has resulted, and unless permanently enjoined by the Court, will continue to result in unjust enrichment for Defendants and irreparable harm to American Deli, for which American Deli lacks an adequate remedy at law.

## COUNT I – BREACH OF CONTRACT

92.

American Deli incorporates by reference, as if fully restated herein, the allegations contained in paragraphs 1 through 91 above.

93.

Mun breached the in-term covenants in Sections 10.3(a)(i) and (ii) of the Franchise Agreement, including by Mun's ownership, operation, and management of the competing Juicy Crawfish Restaurant through Top Cajun.

94.

Defendants breached Section 10.3(a)(i) of the Franchise Agreement, including by diverting and attempting to divert the business and customers of the American Deli Restaurant to their competing Juicy Crawfish Restaurant, directly and indirectly.

29

95.

Defendants breached Section 10.3(a)(i) of the Franchise Agreement, including by injuring and prejudicing the goodwill associated with American Deli's Marks and System, directly and indirectly, through their ownership, operation, and management of the Juicy Crawfish Restaurant through Top Cajun.

96.

Defendants breached Section 10.3(a)(ii) of the Franchise Agreement, including by owning, maintaining, operating, managing, engaging in, having a financial and beneficial interest in, advising, and assisting the Juicy Crawfish Restaurant through Top Cajun, which is a business of a similar character and concept as the American Deli Restaurant that offered and sold menu items such as chicken wings.

97.

Defendants breached, and continue to breach, their post-termination obligations under the terms of the Franchise Agreement and Guaranty, including Sections 17.1, 17.2, 17.4, 17.7, 17.9, and 17.10 of the Franchise Agreement.

98.

Through their misconduct, Defendants have breached the implied covenant of good faith and fair dealing found in the terms of the Franchise Agreement and Guaranty.

99.

Defendants breached, and continue to breach, Sections 1 and 10 of the Lease Assignment, Sections 1(c), (d), (e), and (g) of the Lease Addendum, and Section 17.11 of the Franchise Agreement.

100.

Through their misconduct, Defendants have breached the implied covenant of good faith and fair dealing found in the terms of the Lease Assignment and Lease Addendum.

101.

As a result of Defendants' breaches of the material terms of the Franchise Agreement, Guaranty, Lease Assignment, and Lease Addendum, and of the implied covenant of good faith and fair dealing found in the terms of those agreements, American Deli has suffered compensatory and actual damages in an amount to be proven at trial.

102.

Defendants' breaches of the material terms of the Franchise Agreement, Guaranty, Lease Assignment, and Lease Addendum, and of the implied covenant of good faith and fair dealing found in the terms of those agreements, have caused, and unless permanently enjoined by the Court, will continue to cause irreparable harm to American Deli, for which American Deli lacks an adequate remedy at law.

**COUNT II – FEDERAL TRADEMARK INFRINGEMENT**

103.

American Deli incorporates by reference, as if fully restated herein, the allegations contained in paragraphs 1 through 102 above.

104.

Defendants' use of the Infringing Names has caused, and is likely to cause, confusion, mistake or deception, and constitutes infringement of the AMERICAN DELI Marks in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

105.

Defendants' conduct has caused damage to American Deli and its business.

32

106.

Unless permanently enjoined, Defendants' conduct will cause American Deli irreparable injury for which American Deli lacks an adequate remedy at law.

107.

American Deli is entitled to recover from Defendants all damages it has sustained from Defendants' unlawful and infringing conduct, as well as the profits Defendants have obtained from such conduct, in an amount to be proved at trial and to be trebled pursuant to 15 U.S.C. § 1117.

108.

Defendants' conduct has been willful and deliberate, and amounts to exceptional circumstances, justifying an award of reasonable attorneys' fees and costs to American Deli pursuant to 15 U.S.C. § 1117.

## COUNT III – FEDERAL UNFAIR COMPETITION

109.

American Deli incorporates by reference, as if fully restated herein, the allegations contained in paragraphs 1 through 108 above.

33

110.

Defendants' use of the Infringing Names has caused, and is causing, a likelihood of confusion, mistake or deception as to the source, origin, sponsorship or approval of Defendants' goods and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

111.

Defendants' use of the Infringing Names falsely suggests that Defendants or their goods or services are affiliated with, connected with, endorsed by, sponsored by or approved by American Deli, which they are not, in violation of 15 U.S.C. § 1125(a)(1)(A).

112.

Defendants' conduct has caused damage to American Deli and its business.

113.

Unless permanently enjoined, Defendants' conduct will cause American Deli irreparable injury for which American Deli lacks an adequate remedy at law.

114.

American Deli is entitled to recover from Defendants all damages it has sustained from Defendants' unlawful and infringing conduct, as well as the profits Defendants have obtained from such conduct, in an amount to be proved at trial and to be trebled pursuant to 15 U.S.C. § 1117.

115.

Defendants' conduct has been willful and deliberate, and amounts to exceptional circumstances, justifying an award of reasonable attorneys' fees and costs to American Deli pursuant to 15 U.S.C. § 1117.

## **PRAYER FOR RELIEF**

WHEREFORE, American Deli prays for the following relief:

a. Judgment in American Deli's favor on all claims asserted against Defendants;

b. Compensatory and actual damages arising from Defendants' breaches of contract and breaches of the implied covenant of good faith and fair dealing related to the Franchise Agreement, Guaranty, Lease Assignment, and Lease Addendum;

c.  A disgorgement of all profits received by Defendants arising from or related to their material breaches of the terms of the Franchise Agreement, Guaranty, Lease Assignment, and Lease Addendum;

d.  An award of liquidated damages against Defendants pursuant to Section 17.6(a) of the Franchise Agreement;

e.  An order from the Court permanently enjoining Defendants and their affiliates, subsidiaries, parents, employees, officers, directors, agents, representatives and all others working in concert with Defendants and ordering them as follows:

1)  To fulfill all of their post-termination duties and obligations under the terms of the Franchise Agreement and Guaranty, including pursuant to Sections 17.1, 17.2, 17.4, 17.7, 17.9, and 17.10 of the Franchise Agreement; and

2)  To fulfill all of their duties and obligations under the terms of the Lease Assignment and Lease Addendum, including pursuant to Sections 1 and 10 of the Lease Assignment, Sections 1(c), (d), (e), and (g) of the Lease Addendum, and Section 17.11 of the Franchise Agreement;

36

f.  An order from the Court permanently enjoining Defendants and their affiliates, subsidiaries, parents, employees, officers, directors, agents, representatives and all others working in concert with Defendants from:

   1)  Using the Infringing Names and any marks or names that are so similar to the AMERICAN DELI Marks to create a likelihood of confusion, mistake or deception; and

   2)  Doing any other act likely to induce the mistaken belief that Defendants or their goods or services are in any way affiliated with, connected with, endorsed by, certified by or associated with American Deli; and

   3)  That the Court order Defendants to file with the Court and serve on American Deli, within thirty (30) days of the issuance of such order, a report in writing and under oath setting forth in detail the manner and form of Defendants' compliance with all Court-ordered injunctive relief;

g.  An award to American Deli of the actual and compensatory damages caused to American Deli by Defendants' unlawful and infringing conduct, and a disgorgement of all profits made by Defendants from their unlawful and

37

infringing conduct, in an amount to be proven at trial and trebled pursuant to 15 U.S.C. § 1117;

h.  An award to American Deli of the reasonable attorneys' fees and costs incurred by American Deli in this matter;

i.  Such other relief to American Deli as the Court deems just and proper.

Respectfully submitted this 17th day of July, 2026.

**PIERSON FERDINAND LLP**

_/s/ Vincent Bushnell_____
VINCENT BUSHNELL
Georgia Bar No. 098999
260 Peachtree Street NW
Suite 2200
Atlanta, Georgia 30303
678-902-7190
vincent.bushnell@pierferd.com

*Attorneys for Plaintiff American Deli International, Inc.*